UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT L. McCRAY,

Petitioner,

-v.-

DANIEL GALIOTO,

Respondent.

20 Civ. 4127 (KPF)

**OPINION AND ORDER ADOPTING IN PART REPORT AND RECOMMENDATION**

KATHERINE POLK FAILLA, District Judge[1]:

Pending before the Court is the January 31, 2025 Report and Recommendation (the "Report" (Dkt. #126) (copy attached)) of Magistrate Judge Katharine H. Parker. In the Report, Judge Parker recommended denying Petitioner Robert L. McCray's Amended Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Amended Petition" (Dkt. #98)). Respondent filed a partial objection to the Report on February 14, 2025. (Dkt. #127). In brief, Respondent agrees with the Report's recommendation to deny habeas relief, but argues that one of Mr. McCray's claims should be dismissed on grounds of exhaustion, rather than on the merits. (*Id.*). Mr. McCray, who is proceeding *pro se*, filed his objections to the Report on March 10, 2025. (Dkt. #130).

After careful consideration of the Report and the parties' objections, the Court adopts the Report in substantial part. The Court rejects Mr. McCray's objections to the Report and accepts Respondent's partial objection. Mr. McCray's Amended Petition is therefore denied.

[1] The Clerk of Court is directed to modify the caption of the case as shown above.

# BACKGROUND

## A. Factual Background

The Court provides a brief discussion of the relevant facts, drawing from the Report, the Amended Petition, and a transcript of the trial proceedings ("State Tr." (Dkt. #107-4)). The underlying events began on August 1, 2012, at Mr. McCray's apartment in the Bronx, where Mr. McCray was smoking crack cocaine with his wife, Jennifer Wesley. (*Id.* at 156-59). During the evening, Mr. McCray became upset at Ms. Wesley for "spending all [her] money on drugs," and got into a verbal altercation with Sophia Davis, whom Ms. Wesley paid for the crack cocaine. (*Id.* at 161, 207). Eventually, the altercation escalated and the police were called, who escorted Mr. McCray out of the apartment. (*Id.* at 161-62). After Mr. McCray left, Ms. Wesley remained in the apartment with Leon Dozier, Mr. McCray's roommate, and a third person, Treminishia Harrington. (*Id.* at 165).

Two days later, at approximately 3:00 a.m., Mr. Dozier and Ms. Wesley awoke to the sound of loud bangs on the apartment door. (State Tr. 166-67). The person outside screamed: "yeah, I am going to kill all you motherfuckers in there. Look under the door. This time it's water, but the next time it's going to be gasoline." (*Id.*). Ms. Wesley recognized the voice as Mr. McCray's, cleaned up the water that seeped through the door, and returned to sleep. (*Id.*). Two hours later, Ms. Wesley woke up again to the smell and sight of fire. (*Id.* at 169-71). She woke up the other two occupants, and they evacuated the

apartment together. (*Id.* at 170). Once outside, Ms. Wesley and her companions observed Mr. McCray standing on the street holding a beer can and yelling that he was going to "kill all you motherfuckers." (*Id.* at 180).

On August 3, 2012, a fire marshal, Nelson Roman, arrived at the scene to investigate. (State Tr. 31-32). Mr. Roman found significant damage to the floor, ceiling, and cable lines near the apartment door, and determined that the perpetrator had used an accelerant. (*Id.* at 43-44, 49). Mr. Roman also interviewed Ms. Wesley, Mr. Dozier, and Ms. Harrington in their living room. (*Id.* at 58-59). During the interview, a phone in the apartment began to ring. (*Id.* at 59). Ms. Wesley recognized the phone number as Mr. McCray's, picked up the phone, and asked him, "why did you do that?" (*Id.* at 187). Ms. Wesley and Mr. Roman testified that they heard Mr. McCray respond: "I'm vexed. It's on. It's on. What happen[ed] last night is just the beginning. I'm going to burn your Brooklyn place too." (*Id.* at 61, 187). The call ended, and twenty minutes later, Mr. McCray called again. (*Id.* at 62-63, 188). When Mr. Roman picked up, Mr. McCray stated: "Now it's really on … I know you are talking to the fire marsha[l]s … I'm going to kill you and everybody in there. I didn't do the fire. I didn't do the fire. It could have been anyone." (*Id.* at 64).

## B. Procedural History

### 1. Mr. McCray's Direct Appeals and Collateral Challenges in State Court

On August 21, 2012, Mr. McCray was arrested on suspicion of arson. (State Tr. 73). He was indicted on September 21, 2012, pleaded not guilty, and

proceeded to trial on September 2, 2014. (Dkt. #107-1, 108-1). Twenty-eight days later, a jury found Mr. McCray guilty of arson in the second degree and three counts of contempt in the first degree. (State Tr. 566-67).

The trial court sentenced Mr. McCray on November 6, 2014. (Dkt. #107-5 at 11-12). At the sentencing, the trial court considered the offense conduct and Mr. McCray's criminal history, which included 47 criminal arrests that yielded two felony convictions and 26 misdemeanor convictions. (Dkt. #108-8 at 2). On November 6, 2014, the trial court sentenced Mr. McCray to 18 years in prison and five years of post-release supervision on the arson charge, along with an indeterminate sentence of one-and-one-third to four years in prison on each criminal contempt charge, with all sentences running concurrently. (Dkt. #107-5 at 11-12).

Mr. McCray then filed a series of appeals, beginning with his October 2, 2017 direct appeal to the Appellate Division, First Judicial Department (the "First Department"). (Dkt. #108-12). Mr. McCray raised five arguments on appeal: (i) he was denied his statutory right to testify before a grand jury; (ii) he received ineffective assistance of counsel because of counsel's failure to timely file a motion to dismiss his indictment; (iii) the trial court erred in failing to conduct a mental competency hearing; (iv) the trial court erred in holding that Mr. McCray forfeited his right to be present at trial due to his obstructive behavior; (v) he received ineffective assistance of counsel at sentencing; and (vi) he received an excessive sentence. (*Id.*). The First Department rejected each of Mr. McCray's arguments and affirmed his conviction and sentence.

*People* v. *McCray*, 86 N.Y.S.3d 68 (1st Dep't 2018). The New York Court of Appeals then denied Mr. McCray's request for leave to appeal. *People* v. *McCray*, 32 N.Y.3d 1175 (2019).

On August 1, 2019, Mr. McCray lodged the first of several collateral challenges to his conviction by filing a petition for a writ of error coram nobis in the First Department. (Dkt. #108-17). This time, Mr. McCray argued that his appellate counsel was ineffective in failing to present the appellate brief to Mr. McCray before she filed it. (Dkt. #108-19). The First Department once again denied relief to Mr. McCray, and the Court of Appeals denied Mr. McCray's request for leave to appeal. *People* v. *McCray*, 36 N.Y.3d 974 (2020).

On August 21, 2020, Mr. McCray moved to vacate his conviction under Article 440 of the New York Criminal Procedure Law, based on purported newly discovered evidence. (Dkt. #108-20). *See* N.Y. C.P.L. § 410.10. Mr. McCray argued that his trial counsel was ineffective for failing to conduct any investigation into the facts of his case or to develop his best legal defense. (Dkt. #108-20 at 14-15). As for the putative newly discovered evidence, Mr. McCray cited responses to his requests for information from the New York City Housing Authority, Rikers Island phone records, medical records, copies of identification and benefits cards, and what Mr. McCray claimed to be notarized statements from Mr. Dozier and other individuals. (*Id.* at 3). The trial court denied relief, holding that Mr. McCray's ineffective assistance claim had already been decided on the merits by the First Department, and that none of the documents amounted to newly discovered evidence. (Dkt. #108-26). The

Appellate Division denied Mr. McCray leave to appeal the trial court's decision. (Dkt. #108-29).

### 2. Mr. McCray's Habeas Petition in Federal Court

On May 28, 2020, Mr. McCray filed his original petition for habeas corpus under 28 U.S.C. § 2254 in this Court. (Dkt. #2). The petition sought a stay pending the final disposition of Mr. McCray's coram nobis petition and Section 440 motion in New York Supreme Court. (*Id.* at 10). The Court granted the stay, and Mr. McCray's habeas petition remained stayed when New York state courts denied his coram nobis petition and Section 440 motion on January 28, 2020, and May 8, 2023, respectively. (Dkt. #27).

On March 4, 2024, Mr. McCray filed the Amended Petition. (Dkt. #98). Respondent filed his response on April 29, 2024. (Dkt. #108). Mr. McCray filed his reply on January 13, 2025. (Dkt. #124).

### 3. The Report and Recommendation

On January 31, 2025, Judge Parker issued her comprehensive, thirty-four-page Report, recommending that the Court deny Mr. McCray's Amended Petition. (Dkt. #126). By way of background, Mr. McCray's Amended Petition raised five claims for relief: (i) a Sixth Amendment claim that his trial counsel rendered ineffective assistance in failing to investigate records and testimony; (ii) a Sixth Amendment claim that his trial counsel rendered ineffective assistance during sentencing; (iii) an Eighth Amendment claim that his sentence was excessive; (iv) a Fourteenth Amendment due process claim, alleging that the trial court erred when it failed to order a competency hearing;

and (v) a claim that he was denied his statutory right to testify during a grand jury proceeding. (Dkt. #98).

In the Report, Judge Parker recommended that the Court: (i) dismiss both Sixth Amendment claims as unexhausted, but not procedurally barred, (ii) dismiss the Eighth Amendment claim as unexhausted and procedurally barred, and (iii) deny the Fourteenth Amendment and New York statutory claims on the merits. (Report). Both parties objected to Judge Parker's Report, with Mr. McCray objecting in full and Respondent objecting in part. (Dkt. #127, 130).

## DISCUSSION

### A. Applicable Law

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also United States* v. *Romano*, 794 F.3d 317, 340 (2d Cir. 2015). "If a party fails to properly object to the [report and recommendation], the district judge reviews the [report and recommendation] only for clear error." *Nambiar* v. *Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 359 (2d Cir. 2025). A district court may also review for clear error when a party's "objections are nonspecific or merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition." *Knight* v. *City of New York*, 164 F.4th 173, 177 (2d Cir. 2026) (quoting *Nambiar*, 158 F.4th at 361); *see also Miller* v. *Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

By contrast, a district court reviews de novo "those portions of the Report … to which objection is made." 28 U.S.C. § 636(b)(1)(C); see also Fed. R. Civ. P. 72(b)(3); *Nambiar*, 158 F.4th at 358-61; *Miller*, 43 F.4th at 120. Even if a litigant raises objections that "repeat an argument raised before the magistrate judge," they should be considered de novo so long as the litigant "take[s] issue with a specific legal conclusion in the report and recommendation." *Knight*, 164 F.4th at 177 (quoting *Nambiar*, 158 F.4th at 361). But courts "need not conduct a de novo hearing on the matter." *In re Hulley Enters. Ltd.*, 400 F. Supp. 3d 62, 69 (S.D.N.Y. 2019). "It is sufficient that the Court 'arrive at its own independent conclusion regarding those portions of the report to which objections are made.'" *City of Almaty* v. *Sater*, No. 19 Civ. 2645 (JGK), 2022 WL 1555542, at *2 (S.D.N.Y. May 16, 2022) (quoting *In re Hulley Enters. Ltd.*, 400 F. Supp. 3d at 69).

**B. Analysis**

For the reasons explained below, the Court largely agrees with Judge Parker's analysis, and denies Mr. McCray's claims in full. Before addressing the objections, the Court pauses to adopt Judge Parker's primer on habeas law, which is both legally correct and largely unchallenged by the parties. (*See* Report 9-15).

Mr. McCray lodged a grab-bag of objections to the Report, of which his principal objections are the following: (i) the Report should have applied *Martinez* v. *Ryan*, 566 U.S. 1 (2012), rather than *Murray* v. *Carrier*, 477 U.S. 478 (1986), in its procedural default analysis (Dkt. #130 at 14); (ii) the Report's

conclusion that the Sixth Amendment claims are unexhausted, but not procedurally barred, is "clearly erroneous" because Mr. McCray qualifies for the "fundamental miscarriage of justice exception" (*id.* at 15-16); (iii) the Report erred in recommending dismissal of the Eighth Amendment claim as unexhausted and procedurally barred (*id.*); (iv) Mr. McCray had adequately established his counsel's ineffectiveness, and therefore the Report's application of "double deference" is unwarranted (*id.* at 17-18); and (v) the Report erred in concluding that a competency hearing was unwarranted (*id.* at 18-20). The Court reviews Mr. McCray's objections *seriatim.* The Court also addresses Respondent's partial objection to the Report's findings on the competency hearing, in tandem with Mr. McCray's objection regarding the same issue.

*First*, the Court finds that Judge Parker properly applied *Murray* v. *Carrier*, 477 U.S. 478 (1986), rather than *Martinez* v. *Ryan*, 566 U.S. 1 (2012), in analyzing Mr. McCray's arguments against procedural default. *Murray* sets forth the general rule that "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute [good] cause for a procedural default." 477 U.S. at 486-87. *Martinez* involved a "narrow exception" to that general rule, for a specific type of procedural default where "the State effectively requires a defendant to bring that claim in state postconviction proceedings rather than on direct appeal." *Davila* v. *Davis*, 582 U.S. 521, 524-25 (2017) (discussing *Martinez*, where the petitioner defaulted on Arizona's rule requiring ineffective assistance claims to be brought on collateral rather than direct review). That form of

procedural default is not at issue here, because unlike in Arizona, in New York State, "petitioner's claim could have been brought on direct appeal." *Green* v. *Legoney*, No. 09 Civ. 747 (SAS), 2012 WL 5278465, at *7 n.101 (S.D.N.Y. Oct. 25, 2012). Therefore, the narrow exception in *Martinez* does not apply here.

*Second*, Mr. McCray is mistaken in his belief that the fundamental miscarriage of justice exception applies to his case. "[A] procedural default may be excused even without a showing of cause and prejudice," "[i]f there has been a 'fundamental miscarriage of justice.'" *Washington* v. *James*, 996 F.2d 1442, 1447 (2d Cir. 1993) (quoting *Murray*, 477 U.S. at 495-96). To establish a fundamental miscarriage, the petitioner must prove actual innocence — that is, "by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner [guilty]." *Id.* (internal quotation marks omitted) (quoting *Sawyer* v. *Whitley*, 505 U.S. 333, 336 (1992)). Such claims require the petitioner to support his claim with "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Dixson* v. *Lamanna*, No. 18 Civ. 8285 (KPF) (SN), 2022 WL 19180, at *23 (S.D.N.Y. Jan. 3, 2022) (adopting report and recommendation).

As stated in the Report, none of the purportedly new evidence aids, much less satisfies, Mr. McCray's burden of establishing actual innocence. (Report 20). Indeed, the only proffered items that warrant further discussion are the affidavits by Maria Garcia (dated June 3, 2020), Mike Harris (dated

June 3, 2020), and Brian Johnson (dated June 3, 2020). (Dkt. #108-20 at 115-17; Dkt. #117). Ms. Garcia testified that she saw Mr. McCray enter 1250 Washington Avenue on the date of the crime at 4:55 a.m., and that Mr. McCray had delivered her breakfast at 5:05 a.m. (*Id.*). Mr. Harris testified that he saw Mr. McCray at a grocery store known as "Kiko's" on 169th Street, Bronx, New York, at around 4:45 a.m. (Dkt. #108-20 at 115). Mr. Johnson testified that he saw Mr. McCray at the Hernandez grocery store on 1292 Washington Avenue, Bronx, New York, at approximately "5:05 and or 5:08 a.m." (*Id.* at 116). As detailed in the Report, the fire began at approximately 5:00 a.m., and these affidavits are presumably intended to establish that Mr. McCray could not have set off the fire whilst grocery shopping. (Dkt. #126 at 3).

But these affidavits support, rather than undermine, the prosecution's case against Mr. McCray. Two of the locations, 1250 Washington Avenue and 1292 Washington Avenue, are located on the same block as the apartment at 450 East 169th Street, where the arson occurred.[2] The fact that Mr. McCray was seen shopping for groceries on the corner of Washington Avenue and East 169th Street at approximately 5:00 a.m., is consistent with the possibility that he had committed arson on the same street around the same time. Therefore,

---

2 *See* Google Maps, https://maps.google.com (search distance between 1292 Washington Avenue and 1250 Washington Avenue, Bronx, NY 10456 to 450 East 169th Street, Bronx, NY 10456); *Azzarmi* v. *Neubauer*, No. 20 Civ. 9155 (KMK), 2024 WL 4275589, at *5 n.5 (S.D.N.Y. Sept. 24, 2024) (taking judicial notice of Google Maps location). The Court was unable to find a grocery store known as "Kiko's" on 169th Street, but notes that the house where the arson occurred is also located on 169th Street.

the Court finds that Mr. McCray has failed to meet his burden of establishing actual innocence, and the fundamental injustice exception does not apply.

*Third*, the Court finds no error in the Report's conclusion that Mr. McCray's Eighth Amendment claim was both unexhausted and procedurally barred. (Report 18-21). Mr. McCray does not dispute that he has failed to exhaust his Eighth Amendment claim or that the claim is subject to a procedural bar, but instead argues that he has furnished newly discovered evidence relevant to his actual innocence. (Dkt. #130 at 15). Again, for the reasons stated above, Mr. McCray has failed to establish actual innocence.

*Fourth*, the Court agrees with the Report's conclusion that Mr. McCray's ineffective assistance claims are unexhausted. (Report 15-18). In his objections, Mr. McCray attacks his counsel's effectiveness, without addressing the Report's conclusion that he failed to exhaust those arguments in his state court proceedings. (Dkt. #130 at 17-18). Even if Mr. McCray were correct that his counsel rendered ineffective assistance, those arguments should have been lodged in the New York state courts in the first instance.

*Fifth*, the Court agrees with the Report's conclusion that Mr. McCray's lack of a competency hearing does not entitle him to habeas relief. (Report 24-34). However, on this issue, the Court agrees with Respondent that Mr. McCray's claim should be dismissed on exhaustion grounds, rather than on the merits, because Respondent has not "expressly waived" its exhaustion argument. (Dkt. #127 at 2-4).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, "disfavors a state waiver of exhaustion." *Carvajal* v. *Artus*, 633 F.3d 95, 106 (2d Cir. 2011). To that end, AEDPA provides that a "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, *expressly waives* the requirement." 28 U.S.C. § 2254(b)(3) (emphasis added). "This is a stringent requirement" and requires that any waiver be "knowing and intentional." *Carvajal*, 633 F.3d at 105-06 (overlooking an "erroneous concession regarding exhaustion" made in the prosecution's brief); *see Santana* v. *Brown*, No. 09 Civ. 5176 (JPO), 2013 WL 2641460, at *7 n.6 (S.D.N.Y. June 12, 2013) (holding that respondent did not waive argument even though "[r]espondent appears to assume that [p]etitioner's claim was fully exhausted on his direct appeal").

Here, Respondent appears to have made an "erroneous concession regarding exhaustion." *Carvajal*, 633 F.3d at 105. Respondent argued that Mr. McCray's competency hearing and ineffective assistance claims were "partially unexhausted," but did not explicitly argue that Mr. McCray failed to exhaust his arguments regarding the competency hearing. (Dkt. #109 at 34, 45). Instead, Respondent only argued that Mr. McCray failed to exhaust his arguments regarding his psychiatric history and hospitalizations. If Respondent were an ordinary litigant, that omission could, perhaps, have resulted in an adverse finding of estoppel or forfeiture. But AEDPA requires a

"knowing and intelligent" express waiver, and there is no indication that Respondent ever *expressly* waived that argument in his briefs.

Thus, the Second Circuit's decision in *Cornell* v. *Kirkpatrick*, 665 F.3d 369 (2d Cir. 2011), is distinguishable. (*See* Report 25-26). In *Cornell*, the Second Circuit held that the state had expressly waived its exhaustion argument with respect to the petitioner's ineffective assistance of counsel claim, because the state (i) "consistently explained in its brief to the [federal] [d]istrict [c]ourt" that the petitioner had "exhausted this particular ineffective assistance of counsel claim," and, more pointedly, (ii) conceded that because the petitioner "raised this claim in *federal constitutional terms*" he had "exhausted this claim." *Id.* at 376. Unlike the respondent in *Cornell*, Respondent did not *expressly* state that Mr. McCray exhausted any claim. Rather, Respondent's mistake was one of omission, and under AEDPA, such an implicit waiver is insufficient.

Although the Court agrees with Judge Parker that this is a "close" call, the Court concludes that Respondent did not waive its exhaustion argument. (Report 26). Accordingly, the Court finds that Mr. McCray failed to exhaust his argument regarding the lack of a competency hearing. Having decided this claim on exhaustion grounds, the Court declines to address Mr. McCray's arguments regarding the competency hearing on the merits.

**CONCLUSION**

The Court extends its appreciation to Judge Parker for her thoughtful and well-reasoned Report. For the foregoing reasons, the Report is adopted in substantial part, and the Amended Petition is DENIED. Since Mr. McCray has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). Pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge* v. *United States,* 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to modify the caption as shown above, to dismiss the Amended Petition, and to close this case.

SO ORDERED.

Dated: October 20, 2026
New York, New York

Katherine Polk Failla

KATHERINE POLK FAILLA
United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/31/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT L. MCCRAY,

Petitioner,

-against-

MARK ROYCE,

Respondent.

**REPORT & RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS**

**20-cv-4127 (KPF) (KHP)**

**TO: THE HONORABLE KATHERINE POLK FAILLA, United States District Judge**
**FROM: THE HONORABLE KATHARINE H. PARKER, United States Magistrate Judge**

On September 30, 2014, a jury found Petitioner Robert L. McCray guilty of Arson in the Second Degree (New York Penal Law ("NYPL") § 150.15) and three counts of Criminal Contempt in the First Degree (NYPL 215.51(b)(i)). Petitioner was sentenced to an aggregate prison term of eighteen years and five years of post-release supervision.

On May 28, 2020, Petitioner, proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 2). On March 4, 2024, Petitioner filed an amended petition, which is the operative petition. (ECF No. 98 ("Amended Petition" or "Pet.").) The Amended Petition raises five grounds for relief: (1) Petitioner's sentence is excessive; (2) he was denied his statutory right to testify during a grand jury proceeding; (3) trial counsel rendered ineffective assistance of counsel during sentencing; (4) trial counsel rendered ineffective assistance by failing to investigate records and testimony; (5) the trial court failed to order a competency hearing.

On April 29, 2024, Respondent filed an opposition to the Amended Petition. (ECF No. 109.) Petitioner filed a reply on January 13, 2025, as well as several letters and supplemental

exhibits in support of his Amended Petition. (*See* ECF Nos. 111,[1] 117, 119, 124.) The Court has considered all of Petitioner's submissions.

For the reasons set forth below, I recommend that the Petition be DENIED.

**FACTUAL BACKGROUND**

On the morning of August 1, 2012, Petitioner met his wife, Jennifer Wesley, at his apartment at 450 East 169th Street, a building managed by the New York City Housing Authority (the "450 Building"), to give her $300 from his monthly social security check. (State Court Transcript ("State Tr."), ECF No. 107, Ex. 4 at 152-54, 157.) At the time, Petitioner was living in the apartment with Leon Dozier. (*Id*. at 156.) After arriving at the apartment and accepting the money from Petitioner, Wesley remained at the apartment and began drinking and smoking crack cocaine with Petitioner. (*Id*. at 158–59.) Dozier was also at the apartment. (*Id*. at 159.) Later, Sophia Davis joined Petitioner and Wesley. (*Id.* at 160.) Wesley provided Davis with money to purchase additional crack cocaine. (*Id*. at 161.) Petitioner became visibly upset at Wesley because she was "spending all [her] money on drugs." (*Id*.) After Davis returned with the drugs, Petitioner and Davis began arguing. (*Id.*) Davis ultimately called the police because of Petitioner's behavior. (*Id*. at 162) When the police arrived, they escorted Petitioner out of the apartment. (*Id*.) At some point Davis left, and Treminishia Harrington arrived at the apartment later that evening. (*Id*. at 163.)

The following day, August 2, 2012, Wesley remained at the apartment because she was not feeling well. (*Id*. at 165.) Dozier and Harrington were also in the apartment. (*Id*.) At approximately 3:00 a.m. on August 3, 2012, Dozier and Wesley were awoken by banging on the

[1] Many of the exhibits Petitioner filed at ECF No. 111 were already in the record because Petitioner filed them in support of his New York Criminal Procedure Law § 440.10 motion.

door of the apartment. (*Id*. at 166–67.) Both Dozier and Wesley approached the door. (*Id*. at 167.) Wesley heard a male voice, which she recognized as Petitioner's, screaming from the hallway, stating: "[Y]eah, I am going to kill all you motherfuckers in there. Look under the door. This time it's water, but the next time it's going to be gasoline." (*Id*. at 167.) Wesley then saw water seeping through the front door of the apartment. (*Id*.) Wesley cleaned up the water and returned to sleep. (*Id*. at 168–69.)

Approximately two hours later, Wesley awoke to the smell of fire and observed two to three-inch-high flames emerging from the bottom of the apartment door. (*Id*. at 169, 171.) She woke Harrington and ran to Dozier's bedroom and began to scream to alert him of the fire. (*Id*. at 170). Dozier grabbed a fire extinguisher in his bedroom and approached the front door of his apartment and opened it. (*Id.* at 170, 301-02.) In front of the apartment door, Dozier observed a cardboard box that was on fire. (*Id*. at 302.) Dozier struggled to breathe because of the heavy smoke in the hallway. (*Id*.) Using the fire extinguisher, Dozier put out the fire. (*Id*. at 303).

Wesley contacted the emergency line and opened all of the windows in the apartment. (*Id*. at 172.) When Wesley, Harrington, and Dozier evacuated the apartment and exited the 450 Building, they observed Petitioner standing on the street holding a beer can and hollering at them. (*Id*. at 178–79.) After the fire department left the 450 Building, and upon returning to the apartment, Wesley heard Petitioner continue to scream from the street that he was going to "kill all you motherfuckers." (*Id*. at 180.)

Later that afternoon, Fire Marshal Nelson Roman arrived at the 450 Building to investigate the scene of the fire. (*Id.* at 32.) The floor near the apartment door was charred and the tiles near it had melted. (*Id*. at 37.) The ceiling right above the apartment door, and adjacent to it,

spalled. (*Id*.) At trial, upon reviewing photos from the scene, Roman indicated that dark, circular patterns appeared on the ground near the front door of Dozier's apartment, which can be indicative of the use of an accelerant. (*Id*. at 43–44.) Roman also observed significant damage to the ceiling above the apartment door, including melted cable lines. (*Id*. at 49.)

After observing the damage outside the apartment door, Roman interviewed Wesley, Dozier, and Harrington in the living room of the apartment. (*Id*. at 58–59.) While Roman spoke with Wesley, a phone in the apartment began to ring. (*Id*. at 59.) Roman saw a caller identification number appear on the television in the apartment. (*Id*.) Wesley recognized Petitioner's phone number when it appeared on the caller identification and she informed Roman that the phone number was Petitioner's number. (*Id*. at 60, 187.) Wesley answered the phone and asked Petitioner, "why did you do that?" (*Id*. at 187.) Petitioner started yelling, stating he was going to kill Wesley. (*Id.*) Wesley handed the phone to Roman. (*Id*.) Both Roman and Wesley heard Petitioner state: "I'm vexed. It's on. It's on. What happen [*sic*] last night is just the beginning. I'm going to kill everyone and everything in there. The fire from last night is just the beginning. I'm going to burn your Brooklyn place too." (*Id.* at 61, 187.) Petitioner then ended the call. (*Id*. at 62.)

Approximately twenty minutes later, Petitioner called the apartment a second time. (*Id*. at 62–63, 188.) Wesley answered the phone and handed it to Roman. (*Id*. at 189). Roman heard Petitioner state, "Now it's really on […] I know you are talking to the fire marshalls [*sic*]. I'm going to kill you and everybody in there. I didn't do the fire. I didn't do the fire. It could have been anyone." (*Id.* at 64.) Petitioner then hung up the call. (*Id*. at 64.)

After August 3, 2012, Roman undertook efforts to locate Petitioner, including driving through the area near the 450 Building and inquiring with members of the public if they knew where Petitioner was located. (*Id*. at 71–72.) On August 21, 2012, Petitioner was arrested. (*Id*. at 73.)

## PROCEDURAL BACKGROUND

### A. Indictment and § 190.50 Motion

An indictment was filed on September 21, 2012 and Petitioner was arraigned and pled not guilty on September 25, 2012. (ECF No. 108-7 at 3.) Despite expressing his desire to testify before the grand jury, Petitioner was not afforded the opportunity to do so. Accordingly, in proceedings on September 25, 2012, Petitioner's pre-trial counsel, Howard Levine, expressed his intention to file a motion to dismiss the indictment pursuant to New York Criminal Procedure Law ("NY CPL") § 190.50 (the "§ 190.50 Motion")[2] and asked for a two-day extension to file such motion, which the Court granted, making the deadline October 3, 2012. (*Id.* at 6.) However, Levine did not file the § 190.50 Motion until October 18, 2012. (*Id.* at 4.) The Government opposed the § 190.50 Motion on December 13, 2012, asserting that it was untimely. (*Id.*) The trial court dismissed the § 190.50 Motion as untimely on June 3, 2013. (ECF No. 108-6.)

---

[2] Under New York law, the prosecution is obligated to provide a defendant "a reasonable time to exercise his right to appear" before a grand jury. N.Y. Crim. Proc. Law § 190.50(5)(a). Pursuant to NY CPL $ 190.50(5)(c), a motion to dismiss an indictment based on the denial of a defendant's right to testify before a grand jury must be made within five days of the arraignment and, "[i]f the contention is not so asserted in timely fashion, it is waived and the indictment or prosecutor's information may not thereafter be challenged on such ground." N.Y. Crim. Proc. L. § 190.50(5)(c). New York courts "strictly enforce this waiver rule." *Rosado v. Lempke*, No. 12-CV-3512 CBA, 2015 WL 5560363, at *10 n.12 (E.D.N.Y. May 9, 2015), *report and recommendation adopted*, No. 12-CV-3512 CBA, 2015 WL 5567053 (E.D.N.Y. Sept. 21, 2015).

**B. Petitioner's Conviction in New York State Supreme Court**

Petitioner's trial began on September 2, 2014. (ECF No. 107, Ex. 1.) On September 30, 2014, a jury found Petitioner guilty of Arson in the Second Degree and three counts of Criminal Contempt in the First Degree. (ECF No. 107-4 at 566–67.) A pre-sentence report was prepared by the New York City Department of Probation, which described Petitioner's criminal history, including 47 criminal arrests that resulted in two felony convictions and 26 misdemeanor convictions. (ECF No. 108-8 at 2.) On November 6, 2014, the trial court sentenced Petitioner to eighteen years in prison and five years of post-release supervision for the arson charge, and an indeterminate sentence of one and a third to four years on each criminal contempt charge, with all four sentences served concurrently. (ECF No. 107-5 at 11–12.)

**C. Petitioner's Direct Appeal to the Appellate Division**

On October 2, 2017, Petitioner appealed his conviction, advancing five arguments: (1) that Petitioner was denied his statutory right to testify before a grand jury, (2) ineffective assistance of counsel for failure to file a timely § 190.50 motion, (3) that the trial court erroneously denied a competency hearing and denied Petitioner's right to be present in the courtroom, (4) ineffective assistance of counsel at sentencing, and (5) excessive sentencing. (ECF No. 108, Ex. 12.)

The Appellate Division rejected each of Petitioner's arguments and affirmed his conviction. *People v. McCray*, 165 A.D.3d 595 (1st Dept. 2018). The Appellate Division found that the trial court properly dismissed Petitioner's § 190.50 motion as untimely, and that Petitioner failed to demonstrate how counsel's failure to file a timely § 190.50 motion prejudiced him. *Id*. at 596. The Appellate Division further held that the trial court properly exercised its discretion in denying defense counsel's request for a competency hearing. *Id.* Additionally, the Appellate

Division found that Petitioner's ineffective assistance of counsel at sentencing claim was unreviewable on direct appeal in the absence of a § 440 motion because it involved matters that were not reflected in the trial record. *Id*. at 597. The court also found no basis for reducing Petitioner's sentence. *Id*. Petitioner sought leave to appeal the Appellate Division's decision, asking the New York Court of Appeals to review the decision as to the claims related to the violation of Petitioner's right to testify before the grand jury and the claim related to Petitioner's right to be present in the courtroom. (ECF No. 108-15 at 8-12.) On January 31, 2019, the New York Court of Appeals denied Petitioner's request for leave to appeal. *See People v. McCray,* 121 N.E.3d 218 (N.Y. 2019).

**D. Petitioner's Writ of Error *Coram Nobis***

On August 1, 2019, Petitioner filed a writ of *error coram nobis*, alleging ineffective assistance of appellate counsel. (ECF No. 108-17.) In his motion papers, Petitioner asserted that appellate counsel, Kate Mollison, failed to raise meritorious issues, failed to present the appellate brief to Petitioner before filing it, and for "[h]aving another attorney argue her issues because she was not registered or a license [*sic*] lawyer." (*Id*. at 18.) On January 28, 2020, the Appellate Division denied Petitioner's motion. (ECF No. 108-19.) On December 4, 2020, the Court of Appeals denied Petitioner's request for leave to appeal. *See People v. McCray*, 162 N.E.3d 682 (N.Y. 2020).

**E. Petitioner's New York CPL § 440.10 Motion**

On August 21, 2020, after the initiation of the instant action, Petitioner moved pursuant to NY CPL § 440.10, to vacate his conviction (the "§ 440 Motion"). (ECF No. 108-20.) He argued that his pre-trial counsel rendered ineffective assistance of counsel by failing to file a timely

motion to dismiss, pursuant to CPL § 190.50. (*Id*. at 14–15.) Additionally, Petitioner asserted, without providing more detail, that he received ineffective assistance of counsel because his trial counsel, Rudy Velez, "failed to conduct any investigation into the facts of [the] case, and failed to identify and develop his best defense." (*Id*. at 3.) Finally, Petitioner offered what he described as "newly discovered evidence" that he claimed would have changed the outcome of the trial. (*Id*.) The motion attached several documents including certain responses to requests for information from the New York City Housing Authority, Rikers Island phone records, medical records, copies of identification and benefits cards, and what Petitioner claimed were notarized statements from Leon Dozier and three other individuals. (*Id* at 20–121.)

On May 8, 2023, the Honorable Martin Marcus of New York Supreme Court, Bronx County, denied the § 440 Motion in its entirety. (ECF No. 108-26.) Justice Marcus held that Petitioner's ineffective assistance claim regarding the untimely filing of the § 190.50 Motion had already been decided on the merits by the Appellate Division. (*Id.* at 3.) Justice Marcus also ruled that none of the additional documents provided by Petitioner actually amounted to newly discovered evidence, and none of the documents would have changed the outcome of the trial. (*Id.* at 7-9.) On August 21, 2023, the Appellate Division issued a certificate denying leave to appeal Justice Marcus' decision. (ECF No. 108-29.)

**F. <u>Petitioner's Habeas Corpus Petition</u>**

On May 28, 2020, Petitioner filed the original petition. (ECF No. 2.) The original petition sought a stay pending the final disposition of Petitioner's writ of *error coram nobis*. (*Id*. at 10.) On November 5, 2020, this Court granted a stay of proceedings "to allow time for Petitioner to exhaust his claims still pending in state court." (ECF No. 21.) On January 12, 2021, Petitioner

informed the Court that in addition to the writ of *error coram nobis*, Petitioner also had a § 440 Motion pending before the New York Supreme Court, Bronx County. (ECF No. 23.) Subsequently, the Court ordered that the original petition remain stayed pending the resolution of all state claims brought by Petitioner, including the previously unreported § 440 Motion. (ECF No. 27.) Petitioner's writ of *error coram nobis* and § 440 Motion were denied on January 28, 2020 and May 8, 2023, respectively.

The Court granted multiple extensions of time for Petitioner to submit supplemental briefing regarding the state court litigation. (ECF Nos. 93, 95, 96). On March 4, 2024, Petitioner filed the Amended Petition. (ECF No. 98.) Respondent filed a response on April 29, 2024. (ECF No. 108.) Petitioner filed a reply on January 13, 2025. (*See* ECF No. 124.)

**STANDARD OF REVIEW**

**A. General Legal Principles Applicable to Habeas Review**

Federal courts derive their authority to issue habeas relief to individuals in state custody from 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). *See Harrington v. Richter*, 562 U.S. 86, 97 (2011). In a habeas *corpus* petition, federal courts can rehear the facts of a case on behalf of state prisoners only on the grounds that the prisoners are "in custody in violation of the Constitution, laws, or treaties of the United States." *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) (citing 28 U.S.C. § 2254(a)). "On federal habeas review, AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (internal quotation marks and citation omitted). A federal court may only grant habeas relief when state prisoners show that the state court's decision was either "contrary

to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States," or that the decision was "based on an unreasonable determination of the facts in light of the evidence" before the state court. 28 U.S.C. § 2254(d)(1)-(2).

State court decisions are "contrary to" clearly established federal law only when they are "antithetical to a conclusion of law by the Supreme Court, or decide a case differently than the Supreme Court has when the two cases have 'materially indistinguishable facts.'" *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring)). In the context of a petition under AEDPA, "clearly established law" refers to "only the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)). The Supreme Court case and the challenged decision must involve the same specific question, not merely be similar to one another. *Id*. at 317. Under § 2254, it is not a question of whether a federal court believes the state court's determination of federal law was incorrect but whether that determination was unreasonable, thus creating a high threshold for relief. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Of note, "circuit precedent does not constitute clearly established [f]ederal law, as determined by the Supreme Court . . . It therefore cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (internal quotation marks and citation omitted).

In order to prevail under § 2254, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement." *Harrington*, 562 U.S. at 103. Additionally, if a state court decision does not elaborate on its reasoning, the federal court should "look through" the unexplained decision to the last recorded state decision that does provide relevant rationale. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

When reviewing a habeas petition, the court will presume that the state court's determination of facts are correct, and the petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). It is inconsequential if the court would have reached a different factual conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010).

Finally, when reviewing a petition submitted by an individual proceeding *pro se*, the court is to liberally construe the petition and interpret it "to raise the strongest arguments that [it] suggest[s]." *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (citation omitted). However, the solicitude given to *pro se* parties cannot "exempt a party from compliance with relevant rules of procedural and substantive law[.]" *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted).[3]

**B. <u>Exhaustion and Procedural Default</u>**

Prior to seeking federal habeas review, petitioners in state custody must exhaust all remedies available in state court. 28 U.S.C. § 2254(b)(1)(A); *see also Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014). A habeas petitioner "must give the state courts one full opportunity to

[3] To the extent Petitioner raises claims for the first time in his Reply, the Court does not consider them. *See Siciliano Nunez v. McCarthy*, 718 F. Supp. 3d 209, at *218 n.4 (E.D.N.Y. 2024) (declining to consider claims raised for the first time by the petitioner in reply); *Flemming v. New York*, No. 06 CIV. 15226 LAP, 2013 WL 4831197, at *8 n.11 (S.D.N.Y. Sept. 10, 2013) (same).

resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Jackson*, 763 F.3d at 133 (explaining a "complete round" requires petitioners to present the "essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it") (internal citation omitted). In New York, a habeas petitioner has invoked "one completed round" of review by appealing an issue to the Appellate Division, and then seeking leave to appeal to the New York Court of Appeals. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). In apprising New York's appellate courts of the factual and legal premises of their federal claims, a habeas petitioner is not required to frame their claims in explicit constitutional terms; a state court is fairly apprised of the constitutional nature of a petitioner's claims where there is: (1) reliance on pertinent federal cases employing constitutional analysis, (2) reliance on state cases employing constitutional analysis in similar factual circumstances, (3) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (4) allegation of a pattern of facts that is well within the mainstream of constitutional litigation. *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) (quoting *Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982)).

When a claim can no longer be presented in state court—either because the statute of limitations has run or some other procedural rule prevents the claim from being heard—the claim is procedurally defaulted. A federal court may review a claim that appears to be procedurally defaulted if the petitioner demonstrates that a failure to review the claim would result in a "miscarriage of justice," which occurs when a petitioner is "actually innocent of the crime for which he has been convicted." *Cotto v. Herbert*, 331 F.3d 217, 239 n.10 (2d Cir. 2002).

Alternatively, the court may excuse the procedural default if the petitioner establishes cause for the default and actual prejudice from the errors of which the petitioner complains. *See Murray v. Carrier*, 477 U.S. 478, 495 (1986) (affirming that a demonstration of cause and actual prejudice to be a basis to overcome a procedural default); *Smith v. New York*, No. 20-CV-9708 (LJL), 2023 WL 359568, at *7 (S.D.N.Y. Jan. 20, 2023) (same).

**DISCUSSION**

**A. The Amended Petition is a Mixed Petition**

The Amended Petition can be construed to raise five claims for relief: (1) his sentence is excessive in violation of the Eighth Amendment; (2) he was denied his statutory right under New York law to testify during a grand jury proceeding; (3) trial counsel rendered ineffective assistance of counsel during sentencing in violation of the Sixth Amendment; (4) trial counsel rendered ineffective assistance by failing to investigate records and testimony in violation of the Sixth Amendment; (5) the trial court failed to order a competency hearing in violation of his due process rights under the Fourteenth Amendment.[4] Although Petitioner was given a stay and allowed time to exhaust state law claims, as discussed below, not all of the claims in the Amended Petition are exhausted.

When a habeas petition is a mixed petition, containing both exhausted and unexhausted claims, a court has a choice among several courses of action: (1) dismiss the petition in its entirety without prejudice; (2) deny the entire petition on the merits pursuant to 28 U.S.C. § 2254(b)(2);

[4] Although not entirely clear, to the extent Petitioner intended to also raise a claim that his trial counsel rendered ineffective assistance by failing to preserve for appellate review his right to a competency hearing, Petitioner never raised that claim in his state court proceedings and therefore the claim should be deemed unexhausted. 28 U.S.C. § 2254(b)(1).

(3) excise the unexhausted claims and proceed with a review of exhausted claims; or (4) in limited circumstances, stay the petition to allow petitioner to exhaust his unexhausted claims. *See, e.g.*, *Parsley v. Lamanna,* No. 19-cv-4756 (VB) (PED), 2023 WL 5512311, at *6 (S.D.N.Y. May 2, 2023) (quotation omitted), *report and recommendation adopted*, No. 19-cv-4756 (VB), 2023 WL 5510231 (S.D.N.Y. Aug. 25, 2023); *Scott v. James*, No. 20-cv-07809 (ALC), 2023 WL 5048237, at *6 (S.D.N.Y. Aug. 8, 2023). Of these, option three is the best course of action here given, among other reasons, the time that has passed since the filing of the petition; Petitioner's failure, without good cause, to exhaust all of his claims notwithstanding the time he was allowed to exhaust while this action was stayed; and the risk that any refiled petition would be untimely. *See Parsley,* 2023 WL 5512311, at *7 (recommending that the court not deny a habeas petition entirely on the merits because petitioner's claim involved matters outside the record), *report and recommendation adopted*, No. 19-cv-4756 (VB), 2023 WL 5510231 (S.D.N.Y. Aug. 25, 2023); *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005) (holding that a stay is only appropriate when the petitioner shows good cause for his or her failure to exhaust claims first in state court); *Perkins v. LaValley*, No. 11 CIV. 3855 JGK, 2012 WL 1948773 (S.D.N.Y. May 30, 2012) (refusing to grant request to stay where petitioner "offered no explanation for his failure to exhaust (or even to raise) the claims asserted in the § 440.10 [p]etition prior to the time that he filed the original petition in this case"); *Zarvela v. Artuz*, 254 F.3d 374, 381-82 (2d Cir. 2001) (finding that dismissal without prejudice was inappropriate "because, with so little time remaining on his statutory one-year limitations period, a complete dismissal 'jeopardize[d] the timeliness of a collateral attack"); *Reyes v. Morrissey*, No. 07 CIV. 2539 LAP/DF, 2010 WL 2034531, at *9 (S.D.N.Y. Apr. 21, 2010) (declining to dismiss entire petition outright because of risk petitioner would be barred from

raising any of claims again in federal court in a future petition), *report and recommendation adopted*, No. 07 CIV. 2539 LAP/DF, 2010 WL 2034527 (S.D.N.Y. May 19, 2010); *Jernigan v. Brown*, No. 08 CIV. 9289 JGK DF, 2012 WL 2377082, at *9-10 (S.D.N.Y. May 1, 2012) (excising the unexhausted claims and only considering the exhausted claims, based on the "assumption that Petitioner would prefer the Court to consider the majority of his claims, rather than dismiss the entire Petition"), *report and recommendation adopted*, No. 08 CIV. 9289 JGK DCF, 2012 WL 2394405 (S.D.N.Y. June 25, 2012). Accordingly, I recommend excising the unexhausted claims and proceeding with a merits review of the exhausted claims. I address each of Petitioner's claims below.

**B. <u>Ineffective Assistance of Counsel Claims</u>**

Plaintiff asserts claims for ineffective assistance of counsel (1) in connection with sentencing and (2) for failing to investigate.

Petitioner presented the first of these claims on direct appeal. However, the Appellate Division determined that the claim was "unreviewable on direct appeal, in the absence of a CPL 440.10 motion, because it involves matters not reflected in, or fully explained by, the record[.]" *McCray*, 165 A.D.3d at 597. Thereafter, Petitioner did not raise the claim in his § 440 Motion. Therefore, his claim that his trial counsel was ineffective in connection with his sentencing was never reviewed on the merits by the Appellate Division or the New York Court of Appeals. Thus, it should be deemed unexhausted. *Galdamez*, 394 F.3d at 73 ("A complete round, requires that the petitioner must present[ ] his [or her] claim to the highest court of the state.") (internal citations and quotations omitted).

In contrast, Petitioner's § 440 Motion did raise an ineffective assistance claim related to trial counsel's failure to investigate. In that motion he stated, "Defendant was deprived of his constitutional right to the effective assistance of counsel, where a) defense counsel failed to conduct any investigation into the facts of defendant's case, and failed to identify and develop his best defense." (*See* ECF No. 108-20 at 3.) However, Petitioner failed to provide any supporting facts or specificity to this assertion in the § 440 Motion. (*Id.*) Consequently, the state court found the claim to be without merit because it was unsupported. (ECF No. 108-26 at 4.) Petitioner did not raise the claim in his application appealing the decision on his § 440 Motion.

The first time Petitioner provided any facts about this claim was in the Amended Petition. In it he states that had his counsel properly investigated, trial counsel would have learned that the government's expert witness "fabricated his entire testimony," that there was no record of a fire set in the 450 Building, and that Petitioner had a history of hospitalization. (Pet. at 7.) This Court cannot consider these new facts because they were not presented to the state court and change the nature of what the state court was presented and considered. When a habeas petitioner adds new facts never presented to the state court, courts find that the claim is unexhausted. See *Jackson v. Warden, Com'r of Correction*, No. 3:11-CV-515 VLB, 2012 WL 1019962, at *2 (D. Conn. Mar. 26, 2012) ("[a]dding new factual allegations at the federal level may change the claims that were presented at the state level and render the claim unexhausted" because "the state courts would not have been apprised of 'both the factual and legal premises' of the federal claim.") (citing *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir.1997)); *Robinson v. Bell*, No. 9:19-CV-0777 (GTS), 2022 WL 2713413, at *4 (N.D.N.Y. July 13, 2022) ("The

state courts will not have a fair opportunity to review the claim if material factual allegations have been omitted); *Kirksey v. Griffin*, No. 14CIV8265NSRLMS, 2017 WL 5004847, at *8 (S.D.N.Y. July 31, 2017) (new facts "fundamentally alter the legal claim already considered by the state courts") (internal citations omitted); *Rodriguez v. Hoke*, 928 F.2d 534, 537 (2d Cir.1991) (petitioner's claim of ineffective assistance of counsel was not exhausted where it was based on six factual allegations, only two of which had been raised in state court). Thus, this claim also should be deemed unexhausted.

Despite the lack of exhaustion, a district court need not require a habeas petitioner to satisfy the exhaustion requirement "if it is clear that the state court would find the claim procedurally barred." *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) (internal citations omitted). Respondent argues that N.Y. Crim. Proc. Law § 440.10(3)(c) procedurally bars Petitioner from raising these claims anew in state court. This is incorrect. While it is "certainly possible that the state court may deny a second § 440 motion as procedurally barred," N.Y. Crim. Proc. Law § 440.10(3)(c) is a permissive, rather than mandatory bar, and therefore it is uncertain whether a state court would grant a second § 440 motion. *Tineo-Santos v. Piccolo*, No. 19CV5038MKVJLC, 2021 WL 266561, at *5 (S.D.N.Y. Jan. 27, 2021); *Hall v. Phillips*, No. 05 CIV. 01981, 2010 WL 6612518, at *4 (S.D.N.Y. Apr. 14, 2010). This is true even for the claim that his counsel was ineffective for failing to investigate, which potentially could be reviewed in a successive § 440 motion if the interest of justice so warrants. *See, e.g., People v. Hamilton*, 115 A.D.3d 12, 28 (N.Y. App. Div. 2014) (defendant did not raise the particular basis for claim of ineffective assistance of counsel that he raised in a subsequent 440.10 petition; Appellate Division found that the lower court should have considered the claim in the second 440.10

petition on the merits in the interest of justice); *Tineo-Santos*, 2021 WL 266561, at *5 (concluding that petitioner was not procedurally barred from raising the claim in state court in a successive 440.10 petition).

Because Petitioner is not procedurally barred from raising these ineffective assistance claims, the claims should be deemed unexhausted but not procedurally barred.

**C. <u>Excessive Sentence Claim</u>**

Petitioner asserts that the eighteen-year sentence he received is excessive and should be reduced. Petitioner raised this claim on direct appeal, and the Appellate Division rejected the claim on the merits. However, Petitioner did not raise with the state court any questions of federal law with regard to his sentencing. Rather, his appellate brief, which was prepared by counsel, relied exclusively on state law, arguing Petitioner's sentence should be reduced in the interest of justice under N.Y. Crim. Proc. Law § 470.15(6)(b). As a result, Petitioner did not give the state court an opportunity to evaluate whether his sentence was excessive in violation of the Eighth Amendment. Thus, the claim that his sentence was excessive in violation of the Eighth Amendment should be deemed unexhausted. *Dixson*, 2022 WL 19180, at *25; *Bell v. Ercole*, 631 F. Supp. 2d 406, 418 (S.D.N.Y. 2009) ("To the extent that [the petitioner] also present[ed] a federal claim under the Eighth Amendment, the Court finds this claim unexhausted because the constitutional dimension of the excessive-sentence claim was not 'fairly presented' to the state courts on direct appeal.")

Petitioner cannot seek another direct appeal of his excessive sentencing claim because New York law permits only one such application. *See* N.Y. Ct. R. § 500.20(a)(2) (indicating that "only one application" for leave to appeal a criminal conviction "is available"). In addition,

Petitioner cannot collaterally attack the sentence in state court because an excessive sentence claim could have, and was, raised on direct appeal. *See* N.Y. Crim. Proc. Law § 440.20(2) (providing that a motion to set aside a sentence *must* be denied "when the ground or issue raised thereupon was previously determined on the merits upon an appeal from the judgment or sentence, unless since the time of such appellate determination there has been a retroactively effective change in the law controlling such issue"); *see also Miles v. Ercole*, No. 09 CIV. 1513 KMK PED, 2011 WL 7975088, at *12 (S.D.N.Y. Oct. 18, 2011), *report and recommendation adopted*, No. 09-CV-1513 KMK PED, 2012 WL 1963361 (S.D.N.Y. May 31, 2012) ("because [the excessive sentencing] claim was appealed to the Second Department and denied on the merits, Petitioner may not seek further collateral review.") Thus, this claim should be deemed procedurally barred.

The court can only review the merits of an unexhausted and procedurally barred claim if the petitioner can demonstrate "cause for the default and prejudice or by showing that he is actually innocent of the crime for which he was convicted." *Carvajal*, 633 F.3d at 104 (citing *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir.2001)); *Dixson*, 2022 WL 19180, at *23. If the petitioner cannot demonstrate cause, a court need not evaluate the prejudice element. *Dixson*, 2022 WL 19180, at *23. Dismissal of a claim on federal habeas review on the ground of procedural default constitutes "a disposition of the habeas claim on the merits." *Carvajal*, 633 F.3d at 104.

The failure of Petitioner's state appellate counsel to present the excessive sentencing claim "in federal constitutional terms 'does not constitute cause for a procedural default.'" *Id.* at 108 (quoting *Murray v. Carrier*, 477 U.S. 478, 486, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)).

Nor does Petitioner provide any explanation for why he did not frame the claim in federal terms to the state courts. *Dixson*, 2022 WL 19180, at *23. Thus, Petitioner has not shown cause for the default.

As for actual innocence, Petitioner's argument that his counsel failed to investigate the government's expert witness or the existence of actual records of the fire could be liberally construed as arguments that he is actually innocent. But the "actual innocence" exception requires a petitioner "to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Dixson*, 2022 WL 19180, at *23. In support of his Amended Petition, Petitioner filed various documents, including allegedly notarized affidavits by various individuals,[5] responses from the New York City Housing Authority to Freedom of Information Law requests concerning reported fire alarms,[6] medical records, identification cards, as well as several other documents of questionable relevance. It is unclear how any of these documents exculpate Petitioner, and Petitioner fails to explain how such documents demonstrate his innocence. Given the extensive testimony by Wesley and Dozier at trial, as well as Lieutenant Roman's testimony that he heard Petitioner effectively

[5] For example, Petitioner submitted an affidavit by an individual named Maria Garcia who attested that she observed Petitioner on the day of the crime enter 1250 Washington Avenue at approximately 4:55 a.m. (ECF No. 117.) She also attested that she told investigators that Petitioner delivered her breakfast later that morning at 5:05 a.m. Petitioner does not explain how these statements exculpate him in light of the other evidence – including his incriminating phone statement and given that the fire could have been started prior to or after the time Petitioner encountered Garcia.

[6] Petitioner also suggests that the lack of a reported fire alarm on the date of the alleged crime establishes his innocence. This is unpersuasive. The lack of a NYCHA record of a fire does not establish that a fire did not occur, particularly in light of the numerous witnesses at trial who testified to the existence of the fire.

admit to committing the crime over the phone, Petitioner has failed to present new reliable evidence that would rebut the evidence presented at trial and demonstrate actual innocence.

Accordingly, because Petitioner has not provided cause for the procedural default or demonstrated actual innocence, I respectfully recommend that the excessive sentence claim be denied because it is unexhausted and procedurally barred.

**D. Right to Testify Before a Grand Jury Claim**

Petitioner claims that he was denied his right to testify before the grand jury. This claim should be deemed exhausted because Petitioner raised the issue on direct appeal, and the Appellate Division denied the claim on the merits. *See McCray*, 165 A.D.3d at 596. In addition, Petitioner's application for leave to appeal addressed the denial of Petitioner's right to testify before the grand jury, and the New York Court of Appeals subsequently denied Petitioner's leave application. (*See* ECF No. 108-15.)

Petitioner asserts that he was entitled to testify before a grand jury proceeding under New York law and that he was not given an opportunity to do so. This is a state law claim – there is no constitutional right to appear before a grand jury. *Hirsh v. McArdle*, 74 F. Supp. 3d 525, 533 (N.D.N.Y. 2015); *Davis v. Mantello*, No. 01-2264, 42 Fed. Appx. 488, 491 n. 1 (2d Cir. May 22, 2002) ("A defendant's right to testify before the grand jury is not a constitutional right; rather, it is a statutorily created right.") Because this claim does not implicate a federally protected right, it is not cognizable on habeas review. *Webb v. LaClair*, No. 10 CIV. 7603 PGG HBP, 2014 WL 4953559, at *17 (S.D.N.Y. Sept. 30, 2014) (collecting cases).

On direct appeal, Plaintiff did raise an argument that his pre-trial counsel failed to timely file a § 190.50 Motion and he was prejudiced thereby. Petitioner asserted that had his pre-trial

counsel submitted a timely § 190.50 Motion, the indictment would have been dismissed and "the prosecution would likely have been granted leave to resubmit; thus, the case could have been brought before a new grand jury panel at a later date." (ECF No. 108-12 at 43.) Petitioner also claimed that had he been afforded a new grand jury panel, he would have presented other witnesses who had personal knowledge of Petitioner's whereabouts on the morning of the crime, and that this "could have changed the 'outcome' of the grand jury proceeding." (*Id*.)

But even if this Court were to construe the Amended Petition as asserting ineffective assistance of counsel based on Plaintiff's counsel's failure to timely file a § 190.50 Motion, that argument would be unavailing. In order to prevail on an ineffective assistance of counsel claim, a petitioner must show that: (1) his counsel's performance "fell below an objective standard of reasonableness," and that (2) he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). When evaluating an attorney's conduct, a court must "judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices." *Walters v. United States*, No. 15-CR-644 (AJN), 2022 WL 890906, at *3 (S.D.N.Y. Mar. 25, 2022) (citing *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)). As for prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" means a probability "sufficient to undermine confidence in the outcome." *Id.* An ineffective assistance of counsel claim fails if the petitioner cannot meet both prongs under *Strickland*. *Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011).

Given the deference that must be afforded under both *Strickland* and AEDPA, a court engaged in habeas review of an ineffective assistance of counsel claim is "doubly deferential" to the state court and the attorney. *Woods v. Etherton*, 578 U.S. 113, 117 (2016) ("[F]ederal courts are to afford both the state court and the defense attorney the benefit of the doubt.") (internal quotations and citations omitted). In accordance with this double deference, a federal court may only grant a habeas petition if it concludes that "every 'fairminded juris[t]' would agree that every reasonable lawyer would have made a different decision" than the decision made by petitioner's counsel. *Dunn v. Reeves*, 594 U.S. 731, 740 (2021) (quoting *Harrington*, 562 U.S. at 101).

Courts have consistently held that "any alleged deficiency in the grand jury proceeding ... [is] cured by petitioner's conviction by the petit jury[.]" *Webb*, 2014 WL 4953559, at *7 (quoting *Velez v. People of State of N.Y.*, 941 F.Supp. 300, 316 (E.D.N.Y.1996)); *see e.g.*, *Hirsh*, 74 F. Supp. 3d at 533 ("Here, petitioner was convicted on all three counts, and thus any error regarding his right to testify at the grand jury was harmless."); *Jones v. Cronin*, No. 20-CV-05348 (AT)(SN), 2022 WL 21853203, at *6 (S.D.N.Y. Apr. 29, 2022) (finding that petitioner's conviction at trial "cured any deficiency in the grand jury proceedings") (internal citations and quotations omitted), *report and recommendation adopted*, No. 20CIV5348ATSN, 2023 WL 8643800 (S.D.N.Y. Dec. 14, 2023). The grand jury's role is distinct from that of a petit (or trial) jury—the former determining whether probable cause exists to charge a defendant, the latter determining whether a defendant is guilty of a charge beyond a reasonable doubt— a substantially higher standard. *See Morrow v. Capra*, No. 18-cv-5765 (AMD) (LB), 2023 WL 1070475, at *5 (E.D.N.Y. Jan. 27, 2023) (finding no prejudice to habeas petitioner where petit

jury found guilt). Here, because Petitioner was convicted at trial, any error in the grand jury proceedings is rendered harmless and, therefore, Petitioner cannot meet the prejudice prong of the *Stickland* test. *Occhione v. Capra*, 113 F. Supp. 3d 611, 631 (E.D.N.Y. 2015) ("*Any* grand jury deficiencies are rendered harmless by a petit jury conviction assessing petitioner's guilt under a heightened standard of proof.") (emphasis added); *Webb*, 2014 WL 4953559, at *7 ("counsel's failure to effectuate a defendant's right to testify before the grand jury does not establish ineffective assistance of counsel.") (internal citations omitted). Because Petitioner cannot show prejudice, there is no need to address the objective reasonableness prong of the *Strickland* test. Therefore, even if this Court construed this claim as one for ineffective assistance of counsel, it would fail.

For the above reasons, I recommend that Petitioner's claim that he was denied the right to testify before a grand jury be denied.

**E. <u>Failure to Order a Competency Hearing</u>**

Petitioner's final claim is that the trial court violated his due process rights by failing to order a competency hearing. Petitioner raised this claim on direct appeal, and the Appellate Division denied the claim on the merits. But, Petitioner did not specifically identify this claim as one of the claims he was seeking leave to appeal in his leave application to the Court of Appeals.[7] (*See* ECF No. 108-15 at 1-15.) His application did attach briefs from the lower court discussing the failure of the trial court to hold a competency hearing and his leave application generally referenced Petitioner's "outbursts," "delusions and paranoia" during trial. Nevertheless,

[7] Petitioner's leave application specifically sought leave to appeal the Appellate Division's decision as it related to the violation of Petitioner's right to testify before the grand jury, and Petitioner's right to be present in the courtroom.

because this claim was not among specific claims listed in the leave application, these general references did not fairly present the failure to hold a competency hearing claim to the Court of Appeals. (*See* ECF No. 108-15 at 1- 15.) *See Earl v. Graham*, No. 17CIV8814NSRJCM, 2020 WL 8872704, at *12 (S.D.N.Y. Apr. 22, 2020) (internal citations omitted), *report and recommendation adopted*, No. 17CV8814NSRJCM, 2021 WL 981549 (S.D.N.Y. Mar. 16, 2021)( "claims not explicitly preserved in a leave application are unexhausted even where some reference is made to their presentation to the Appellate Division."); *Jordan v. Lefevre*, 206 F.3d 196, 198–99 (2d Cir. 2000) ("[Petitioner] arguing one claim in his [leave application] while attaching an appellate brief without explicitly alerting the state court to each claim raised does not fairly present such claims for purposes of the exhaustion requirement underlying federal habeas jurisdiction.") Nonetheless, Respondent construed the leave to appeal application differently and stated in its brief to this Court that it believes Petitioner's leave application included this claim. It therefore argues that Petitioner's claim fails on the merits.

AEDPA provides that a "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(3). In *Cornell v. Kirkpatrick*, the Second Circuit held that the government had waived its exhaustion argument when it erroneously stated in its brief that Petitioner had raised the claim "in federal constitutional terms" and had thus "exhausted his claim." 665 F.3d 369, 376 (2d Cir. 2011). The Second Circuit concluded that although the government was incorrect that the petitioner's claim was exhausted, because the government "consistently explained in its brief to the District Court that [the petitioner] had exhausted this particular ineffective assistance of counsel claim," the

government had waived the issue and the Court could proceed to review the claim on the merits. *Id.*; *cf. Carvajal*, 633 F.3d at 106 (declining to find an "express" waiver where the government's concession regarding exhaustion was "equivocal" and unclear). In the present case, Respondent treats the competency hearing claim as having been raised in the leave application and argues that Petitioner's competency hearing claim fails on the merits.[8] While AEDPA "disfavors a [finding of] state waiver of exhaustion," and the Court acknowledges that this case presents a close call, Respondent's arguments here lead me to recommend finding that Respondent waived its exhaustion argument. *Cornell*, 665 F.3d at 376. Therefore, I address the merits of this claim.

It is "well established that where the evidence 'raise[s] a sufficient doubt as to a defendant's competence to stand trial, the failure of the trial court to conduct a competency hearing sua sponte violates due process.'" *Smith v. Rock*, 344 F. App'x 656, 657 (2d Cir. 2009) (quoting *Nicks v. United States*, 955 F.2d 161, 168 (2d Cir.1992)). "[T]he Constitution does not permit trial of an individual who lacks mental competency." *Indiana v. Edwards*, 554 U.S. 164, 170 (2008). When assessing competence, the trial court must determine "(1) whether the defendant has a rational as well as a factual understanding of the proceedings against him and (2) whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." *Valenzuela v. Keyser*, No. 19CIV03696KMKJCM, 2023 WL 8788810, at *15 (S.D.N.Y. Nov. 29, 2023) (citing *Drope v. Missouri*, 420 U.S. 162 (1975)), *report and recommendation adopted*, No. 19-CV-3696 (KMK), 2023 WL 8780157

[8] Respondent does argue that to the extent Petitioner is attempting to reference his psychiatric history and hospitalizations, he did not raise such evidence in state court and therefore any claim that the state court should have considered those materials would be unexhausted. However, Respondent does not specifically argue that Petitioner failed to exhaust his claim that the trial court improperly failed to hold a competency hearing.

(S.D.N.Y. Dec. 19, 2023). While there are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed," the following factors are relevant: "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial." *Drope v. Missouri*, 420 U.S. 162, 180 (1975). Further, although a trial court is not required to "accept without question a lawyer's representations concerning the competence of his client . . . an expressed doubt in that regard by one with 'the closest contact with the defendant' . . . is unquestionably a factor which should be considered." *Id.* at 177 n.13.

A hearing to determine the competence of a criminal defendant is only required if the court "has reasonable cause to believe that the defendant has a mental defect rendering him incompetent."[9] *United States v. Zhou*, 428 F.3d 361, 379 (2d Cir. 2005) (internal quotations omitted). Notably, a competency hearing "is not ground for reversal when the defendant appears competent during trial." *Valenzuela*, 2023 WL 8788810, at *15 (quoting *United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir. 1986)). Accordingly, the proper inquiry on habeas review is not whether the defendant was actually incompetent, but rather "whether it was *objectively unreasonable* for the state trial court to have concluded (and the state appeals court to have agreed) that the circumstances *did not* present a reasonable ground for believing that [petitioner] was incompetent." *Harris v. Kuhlmann*, 346 F.3d 330, 355 (2d Cir. 2003) (emphasis in original). In addition, "deference is owed to the [trial] court's determinations based on

[9] The standard for deciding whether to order a competency hearing is the same under New York and federal law. *Valenzuela v. Keyser*, No. 19CIV03696KMKJCM, 2023 WL 8788810, at *17 (S.D.N.Y. Nov. 29, 2023) (internal citation omitted), *report and recommendation adopted*, No. 19-CV-3696 (KMK), 2023 WL 8780157 (S.D.N.Y. Dec. 19, 2023).

observation of the defendant during the proceedings." *United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir. 1986).

Petitioner primarily argues that the trial court had reasonable grounds to question his competence because Petitioner's pre-trial counsel explicitly requested a competency hearing. The request for a competency hearing occurred during a pre-trial conference. An excerpt of the transcript from that conference is reproduced below:

| | |
|---|---|
| The Court: | Mr. Levine, is there any justification at this point for changing bail? Is there any change in circumstance? |
| Mr. Levine: | No, your Honor. |
| [Petitioner]: | There's no change? I want a new lawyer. I will not come in the courtroom with him being my lawyer. I want a new lawyer. |
| The Court: | Mr. McCray, you tell me what change of circumstances has there been? |
| [Petitioner]: | What change? You have no statements, that one. I have not been [validly] indicted, that's two okay. You asked for the, I asked you for a copy of the indictment, which I never received. |
| Mr. Levine: | Shhhhh. |
| [Petitioner]: | Where is the indictment, ADA's indictment? |
| Mr. Levine: | Judge, I'm going to request a 730.[10] |
| [Petitioner]: | 730? Man, I will - - |
| The Court: | Mr. McCray . . . [h]ere is the indictment. |
| [Petitioner]: | Can I see it? I never seen the indictment. |
| Mr. Levine: | I had given him it. |
| [Petitioner]: | You have a copy? I want a new lawyer. He requested 730. I'm in [the] Appellate Division, I'm waiting for an answer in the Appellate Division. I want a new lawyer. I don't want this lawyer to represent me any longer. |
| The Court: | Mr. McCray, I understand what you are saying, but my question is - - |
| Mr. Levine: | Judge, I'm going to have to get off the case. Mr. McCray just said he's going to kill me, motherfucker. |
| [Petitioner]: | I want him off my case, simple as that. Nineteen months he hasn't done anything. I'm here on [an] illegal arrest. There was no warrant. He said it was probable cause for me to be locked up. |
| The Court: | Mr. McCray, stop talking and lower your voice. You have repeatedly said things to me that are blatantly not true. You've said - - you made representations about things that I've done that are not true. You've said thing about the Appellate Division that are completely wrong. |

[10] Under NY CPL § 730.30(1), a state court "must issue an order of examination when it is of the opinion that the defendant may be an incapacitated person."

(ECF Doc. No. 107 at C144-46.)

In addition to citing his pre-trial counsel's explicit request for a competency hearing, Petitioner asserts that it was evident at trial that he was "either delusional or did not understand the proceedings against him." (Pet. at 3-4.) On direct appeal, Petitioner highlighted several instances that he claims demonstrate he lacked the psychological capacity to stand trial. For example, in the first few months of the case, Petitioner filed many letters to the trial court and other individuals that, according to Petitioner, exhibited "paranoia and delusional thinking." (ECF No. 108-12 at 50.) These letters contained accusations of a conspiracy involving the trial court, denial that any fire ever occurred, and claims that the prosecution falsified documents.[11] (ECF No. 108-30.) In addition, Petitioner's appellate brief states that on the morning of the crime, Petitioner was sent to the hospital by police because he exhibited symptoms of being an "emotionally disturbed person," which Petitioner states the trial court was aware of. (ECF No. 108-12 at 52.) Finally, Petitioner points out that throughout the proceedings before the trial court, Petitioner engaged in disruptive, inappropriate, and at times aggressive conduct, and therefore, the trial court should have ordered a competency hearing.

[11] *See, e.g.*, Letter to Judges Marcus and Villegas, dated Dec. 17, 2013 ("I am compelled to write the both of you, reason being because I am aware that the two of you conspired together against me to deny me, my most basic and fundamental rights . . ."); Letter to Judge Marcus, et al., dated June 19, 2014 ("The Fire Marshal was trying to ostracize[] me with these false allegations, so when I did the opposite and was laughing at him, he turned the defenses against me. . . . The main factor that is being overlooked here is that how many police officers drink coffee during the hours from 4:00 A.M. until 5:00 A.M. and the shift change that takes place between them."); Letter to District Attorney, October 31, 2013 ("Why has the assigned assistant district attorney to said case violated my constitutional rights by falsifying the reports along with the fire marshal . . . Yet these same two parties have come together as one to literally lie and change official legal documents . . .").

In response, Respondent argues that the record demonstrates Petitioner *did* understand the proceedings against him and was able to communicate with his lawyer. For example, Respondent highlights that during the conference in which pre-trial counsel requested a competency hearing, Petitioner stated that he never received a copy of the indictment and reminded his attorney of the trial court's prior instruction to make a bail application. (ECF No. 107 at C144.) While Respondent acknowledges that Petitioner had frequent outbursts during the course of his trial and was disruptive, Respondent argues that such behavior shows a lack of respect for the proceedings, rather than incompetency. Respondent highlights that Petitioner's outbursts evinced an intention to communicate his defense, as Petitioner had a tendency to interject when witnesses were testifying in a manner that tended to show Petitioner was guilty of starting the fire. As to the letters Petitioner sent to the trial court and others, Respondent asserts that several of the letters demonstrate an understanding of the proceedings, such as providing a witness list and requesting that the court forgive any errors he makes in his filings pursuant to N.Y. C.P.L.R. § 2101. (*See* ECF No. 108-30, 10/18/2014 letter, 12/20/2013 letter.) Finally, Respondent argues that Petitioner's reference to his mental health issues dating back to 1971 are "unsubstantiated" and, in any case, not dispositive of competency.

Considering the evidence before the trial court, it cannot be said it was objectively unreasonable for the trial court not to order a competency hearing. The Court acknowledges that pre-trial counsel's explicit request for a competency hearing could raise a question about Petitioner's competence. However, when viewed in context of the moment in which that request was raised, combined with the trial court's experience observing Petitioner's behavior, and Petitioner's comments throughout the trial that suggest he grasped the proceeding and

was familiar with his rights, the trial court could have reasonably concluded that pre-trial counsel made the request not out of genuine concern for his client's competence, but in a moment of exasperation as a result of his client's unruly conduct, or to take advantage of the conduct to assert a new reason to avoid an adverse verdict for his client. Notably, after the conference in which pre-trial counsel requested a competency hearing, new counsel was appointed to represent Petitioner through trial. Petitioner's new counsel never requested a competency hearing. Further, several statements in the record demonstrate that Petitioner understood the proceedings against him. Just by way of example, the following statements show Petitioner understood the court's questions and his rights:

- "THE COURT: So, you have a right to be present, but if you don't come, if you voluntarily don't come for non-religious reasons, for non-health reasons, you decide not to come, then the trial can go forward without you, and if that happens you're going to forfeit. THE DEFENDANT: I realize all that, your Honor.") (*See e.g.* ECF No. 107-1 at 42)
- "THE DEFENDANT: All right, but I want to talk to [defense counsel] right now, cause I need something in the minutes.") (ECF No. 107-2 at 3)
- "THE DEFENDANT: Don't forget, I still have a right to testify, in case I change my mind."). (ECF No. 107-4 at 422).

Given Petitioner's multiple statements during trial demonstrating awareness and understanding of the proceedings, the trial court could have concluded that Petitioner was simply obstreperous, not incompetent. *See United States v. Lucas*, No. 1:17-CR-00129 EAW, 2019 WL 1986617, at *4 (W.D.N.Y. May 6, 2019) (internal quotations omitted).

The Court also notes that while several of the letters Petitioner sent to the trial court use hyperbolic language and are at times difficult to follow or suggest conspiratorial thinking, many of the letters can be read as showing that Petitioner did understand the proceedings and sought to raise on his own certain substantive and procedural issues with the trial court. (*See, e.g.*, ECF No. 108-30 at 1 (imploring Justice Marcus to take notice that two potential witnesses would have given exculpatory testimony at grand jury proceedings had they been permitted to testify), 3 (informing Justice Marcus that Petitioner had not received a copy of the indictment), 8 (notifying Justice Marcus of counsel's failure to adequately prepare his defense). In addition, while Petitioner argued on direct appeal that on the day of the crime he was sent to the hospital by law enforcement officers because he was exhibiting symptoms of being emotionally disturbed, at trial the sergeant who interacted with Petitioner on the scene testified that the officers sent him to the hospital because he was "intoxicated," and acting "uncooperative" and "just loud." (ECF No. 107-4 at 246.) Further, alleged mental illness at the time of the crime is not directly relevant because "[t]he question of competency to stand trial is limited to the defendant's abilities *at the time of trial*." *Vamos*, 797 F.2d at 1150 (emphasis added).

This case is distinguishable from cases in which courts have granted habeas relief based on the trial court's failure to order a competency hearing. For example, in *Smith v. Rock*, it was clear in the record that the trial judge believed the petitioner did not comprehend the proceedings against him, because he observed that the petitioner was "incoherent and unintelligible" and "delusional and irrational on the witness stand" and that he could not "coherently recount the basic chronology of the incident[.]" 554 F. Supp. at 513, *aff'd*, 344 F. App'x 656 (2d Cir. 2009). In *Musaid v. Kirkpatrick*, the petitioner was hospitalized as

incompetent for most of the eight-year pendency of his prosecution and he was examined for competency many times, and most times was found to be incompetent. 114 F.4th 90, 111 (2d Cir. 2024). In particular, the petitioner was examined for competency ten months before trial and found to be competent, but the trial court did not conduct an inquiry into the petitioner's competence leading up to or during trial, despite knowing that the petitioner had a history of "cyclical returns to incompetency after temporarily reaching medically-induced competency." *Id.* In addition, petitioner's counsel stated at sentencing that his client's competency was an "open question" and that the petitioner's behavior demonstrating incompetency had been consistent "prior to trial, during and after the trial." *Id.* at 114. In contrast to these cases, Petitioner does not cite, and after careful review by this Court, the evidence does not support a finding that it was objectively unreasonable for the trial court not to have found reasonable cause to order a competency hearing or to believe that the defendant had a mental defect rendering him incompetent to stand trial. In addition, the indicia of incompetence was far stronger in *Rock* and *Musaid*, unlike in the present case where there is no history of sustained incompetence or recognition from the trial court that Petitioner lacked competence.

On habeas review, this Court must afford deference to the state trial court, which was in the best position to evaluate whether Petitioner's competency could be reasonably questioned. *Vamos*, 797 F.2d at 1150. On balance, after careful review of the record and arguments, Petitioner has not shown that the trial court's failure to order a competency hearing was *objectively unreasonable*. *Woodley v. Griffin*, No. 13-CV-5541 TPG, 2015 WL 4897552, at *11 (S.D.N.Y. Aug. 17, 2015) (emphasis added), *aff'd*, 652 F. App'x 75 (2d Cir. 2016) ("[w]hile petitioner has raised evidence indicating that the trial court *could have* justifiably held a

competency hearing, he has failed to show that the refusal to do so was objectively unreasonable.") Accordingly, I respectfully recommend that Petitioner's claim for relief based on the trial court's failure to order a competency hearing be denied.

**CONCLUSION**

For the foregoing reasons, I respectfully recommend that the Amended Petition be DENIED.

**The Clerk of Court is respectfully directed to mail a copy of this Report & Recommendation to the pro se Petitioner**.

Dated: New York, New York
January 31, 2025

Respectfully submitted,

Katharine H Parker

KATHARINE H. PARKER
United States Magistrate Judge

**NOTICE**

**The Petitioner shall have seventeen days, and the Respondent shall have fourteen days from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)). A party may respond to another party's objections after being served with a copy. Fed. R. Civ. P. 72(b)(2).**

**The Petitioner shall have seventeen days, and the Respondent shall have fourteen days from the date of service of any objections to serve and file any response. Any objections and any responses to such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Katherine Polk Failla at the United States Courthouse, 40 Foley Square, New York, New York 10007, and served on the other parties. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Failla. The failure to file timely objections shall result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).**